UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VERNON PAUL, | ) | Case No. 1:03 CV 0046 |
| | ) | |
| Petitioner, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| MARGARET BAGLEY, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Petitioner Vernon Paul (hereinafter Paul), a state prisoner, has applied for habeas corpus relief under 28 U.S.C. §2254.  In April 2001, Paul was convicted in the Cuyahoga County Court of Common Pleas for: having a weapon while under disability in violation of R.C. 2923.13; possession and preparation of drugs for sale in violation of R.C. 2925.07 and 2925.34, respectively (two separate counts from the indictment were merged after the verdict); and possession of criminal tools in violation of R.C. 2923.24. Paul was sentenced to imprisonment for one year for each count for an aggregate prison term of three years and forfeiture was ordered for the items seized, a handgun, cell phone, pager, and around $1295 in currency.

Two appeals were filed to the Court of Appeals of Cuyahoga County by two different attorneys in May 2001.  After Paul apparently retained one attorney but not the other, the Court of Appeals granted his motion to consolidate or dismiss the second appeal.  On consolidated appeal, the convictions were affirmed.  See *State v. Paul*, 2002 WL 228848 (Ohio App. 8 Dist).  Paul's subsequent appeal to the Ohio Supreme Court was also denied.  *State v. Paul*, 96 Ohio. St.3d 1439, 770 N.E.2d 1049 (2002).

1:03 CV 0046                                    2

In this habeas petition, Paul lists eight grounds in support of his contention that he is being held unlawfully, and his property seized illegally, some of which contain multiple sub-claims.  Most, but not all, of the arguments were raised before the state courts, although several of the grounds have been rearranged or modified.  Respondent concedes that Paul has exhausted his state remedies and  that the petition is timely.

Paul was arrested on January 2, 2001 near 4700 Central Avenue in East Cleveland, on property adjacent to apartment buildings under the supervision of the Cleveland Metropolitan Housing Authority (CMHA).  An unnamed informant, presumably a resident of the apartment buildings, notified an undercover CMHA police officer that a man was selling drugs from a Mercury Grand Marquis on the building grounds.  The officer arrived on the scene and watched the suspect for "twenty or thirty minutes as several people walked up to the [petitioner]."  After calling for backup, the officer approached to arrest and search Paul, retrieving more than $1295 in cash (which Paul claimed were lottery winnings), a cell phone, pager, and an unloaded firearm under the front passenger seat of Paul's locked car.  Paul admitted to one of the officers that he had "sold a couple of stones."  A rock of crack cocaine was also recovered on the ground near Paul after being observed in Paul's possession.  A defense witness would later testify that he (the witness) believed the firearm had been left in the car by someone who had offered to wash Paul's car.

1:03 CV 0046                                    3

*Federal Standard of Review:*

For purposes of federal collateral review, all claims adjudicated on their merits by state courts are governed by 28 U.S.C. §2254(d)(1) and (2).   A district court has very restricted Congressionally granted powers under the limited standard of review granted under 28 U.S.C. §2254(d).  See *Williams v. Taylor*, 529 U.S. 362, 402-03, 117 S.Ct. 1495, 146 L.Ed.2d 389 (2000)*; Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).  The extent of permissible federal review of state convictions is set forth in statute as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim  - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (emphasis supplied).

The phrases "contrary to" and "unreasonable application" are not the same.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).  Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [this] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263

1:03 CV 0046                                                  4

(2003).  Under those circumstances the Supreme Court has held that the federal court on habeas review

may grant the writ.  *Id.*   The phrase "clearly established Federal law" refers to holdings, as opposed to

*dicta,* of the U.S. Supreme Court at the time of the relevant state court decision.  *Lockyer*, 538 U.S. at

71-72, 123 S.Ct. at 1172; *Williams v. Taylor*, 529 U.S. at 412; *Bell v. Cone*, 535 U.S. at 698.


Under the "unreasonable application" standard, "the state court identifies the correct governing legal

rule from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case."  *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535,

156 L.Ed.2d 471 (2003).  This includes both the state court's refusal to extend or its unreasonable

extension of existing legal principles from Supreme Court precedent to new contexts.  See *Williams*, 529

U.S. at 407.


However, the Supreme Court has stated that a federal reviewing court may not find a state court

adjudication to be "unreasonable," "simply because that court concludes in its independent judgment that

the relevant state-court decision applied clearly established federal law erroneously or incorrectly."

*Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000).  The

unreasonable application of precedent must be "objectively" unreasonable.  *Id.,* 529 U.S. at 409, 120

S.Ct. at 1521.

1:03 CV 0046                                        5

As of yet, the Supreme Court has not concretely defined "objectively unreasonable," but it has criticized the Fourth Circuit's interpretation of the phrase as requiring an application of federal law "in a manner that reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521.  Post-*Williams*, the Second Circuit has concluded that an objectively unreasonable application of Supreme Court precedent "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists'." *Henry v. Poule*, 409 F.3d 48, 68 (2d. Cir 2005); *Francis v. Stone*, 221 F.3d 100, 109 (2d. Cir. 2000).  In the Sixth Circuit, the panels have on occasion applied a definition of "not debatable among reasonable jurists" as the definition of objectively unreasonable.  See *Joshua v. Dewitt*, 341 F.3d 430, 436-37 (6th Cir. 2003); *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).  This standard, though, resonates too closely to the Fourth Circuit's criticized definition.  See *Staley v. Jones*, 239 F.3d 769, 774 n. 1 (6th Cir. 2001); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  In *Staley* and *Harris* district courts were left to their own devices in applying the nebulous *Williams* standard of "unreasonable application" of federal law.

Finally, this is not to say that under the "unreasonable application" standard, independent review of the record is forbidden on habeas review.  However, where the state court has articulated its reasoning the federal court is prohibited from substituting its own independent judgment as to what the state court should have considered in reaching its conclusion.  *Joshua v. Dewitt*, 341 F.3d 430, 442 (6th Cir. 2003).

1:03 CV 0046                                      6

> GROUND ONE:        Fourth and Fourteenth Amendments.  Petitioner was
> denied a fair and impartial hearing concerning his motion
> to suppress.  The court refused to make any findings and
> his arrest was constitutionally infirm.

Paul argues that he was denied a fair and impartial hearing on a pre-trial motion to suppress evidence (crack cocaine and the handgun) because the trial court failed to make factual findings for the record.  He also argues separately that his arrest was unconstitutional, a fact that, if true, should have required the trial court to grant his motion to suppress.

Paul claims that because the trial court failed to record any factual findings, the Court of Appeals could not assess the credibility of witnesses called or evidence introduced at his pre-trial hearing.  Paul is absolutely correct that Rule 12(E) of the Ohio Rules of Criminal Procedure requires a trial court to record its factual findings in pre-trial motion hearings.  "Where factual issues are involved in determining a motion, the court shall state its essential findings on the record."  Ohio R. Crim. P. 12(E); see also *United States v. Moore*, 936 F.2d 287 (6th Cir. 1991); *U.S. v. Pedro Prieto-Villa*, 910 F.2d 601 (9th Cir. 1990). There was no explanation of the trial court's decision to overrule Paul's motion to suppress evidence in the record.

This is an argument, however, that was not raised by Paul in the state courts. "Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004); *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003). "A federal court will not address a habeas petitioner's federal constitutional claim unless the petitioner has

1:03 CV 0046                                    7

first fairly presented a claim to the state courts." *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004);

*Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995).  Accordingly to be "fairly presented" the federal

ground must be presented under the same theory as when presented to the state court.  *Wong v. Money*,

142 F.3d 313, 322 (6th Cir. 1998); *Williams v. Bagley*, 380 F.3d 932, 969 (6th Circ. 2004).  In effect,

Paul has changed the basis on which his due process argument rests.  Although this argument is clearly

related to the arguments actually raised in state court, here, as in *Lott v. Coyle*, "relatedness of the issues...

does not save [petitioner's] claim."  *Id.*, 261 F.3d 594, 607 (6th Circ. 2001).  This argument cannot now

be considered on habeas review.


     Paul, though, by his traverse incorporates his original arguments from state proceedings:

    1.    lack of CMHA officer's jurisdiction because Paul had walked off CMHA property before being patted down and arrested.

    2.    lack of probable cause for the stop and pat-down.

    3.    anonymous complaint of drug activity was constitutionally inadequate; and

    4.    the arresting officer made statements at the pretrial hearing that were inconsistent with his testimony at trial.[1]


    These are the "facts" that Paul claims caused his arrest to be in violation of the Fourth Amendment.

---

[1] This last argument is also raised by Paul in the second ground alleging prior inconsistent statement. Again there is no factual support for this claim.

1:03 CV 0046                                                    8

With respect to each argument, the Court of Appeals found that the officer's statements were not in fact inconsistent; that Paul's detention away from CMHA property formed no basis for relief because the exclusionary rule applies to constitutional violations, not violations of state statutes (but the arrest was still proper because Paul's alleged criminal activity began on CMHA property);  that the anonymous tip claim was unreviewable because it had not been listed as a basis for the motion to suppress before the Court of Common Pleas; and that there was probable cause for the stop and pat down.

For its part, the respondent, Warden Margaret Bagley, argues that a federal court is prohibited from reviewing a claim of a Fourth Amendment violation that was tried in state court.  She cites *Stone v. Powell* in support of this contention (428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)).

*Stone* held that a state convict's Fourth Amendment claim is not reviewable on habeas corpus if there had been an opportunity for full and fair litigation of the claim in state courts.  *Id.*, 428 U.S. at 481-82. Full and fair opportunity requires an adequate state procedural mechanism for this review.  If so, then the remaining question is whether presentation of the Fourth Amendment claim for suppression was frustrated because of the failure of the procedural mechanism.  See *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). The Ohio procedural mechanism is adequate to review Fourth Amendment claims.  *Riley*, 674 F.2d at 526.

Paul consequently must establish a failure in the procedural mechanism which somehow prevented him from litigating his claims.  See *Machacek*, 213 F.3d at 952.  His new argument based on the trial

1:03 CV 0046                                                    9

court's failure to elaborate on its denial of the motion to suppress, though, does not demonstrate that Paul

was prevented from litigating his claims.  His claims were carefully considered by the state appellate court

with an articulate explanation affirming the denial of suppression.  Accordingly, federal collateral review of

Paul's Fourth Amendment claim is foreclosed by *Stone v. Powell*.  In any event even if federal review

were possible, Paul has not established in his arguments that the state court's decision denying suppression

of evidence was "contrary to" or "unreasonable application" of clearly established *federal law*, governing

probable cause and pat-down searches, nor that its review of the alleged inconsistent statements was an

unreasonable determination under §2254(d)(2) and 2254(e).


GROUND TWO:          Fifth and Sixth Amendments.  Petitioner was denied his
right of confrontation and cross-examination when the
court would not allow a prosecution witness to be cross-
examined concerning a prior inconsistent statement made
by the witness at a prior proceeding.


Paul argues that the trial court prevented defense counsel from asking a clarifying question about

prior inconsistent testimony from the suppression hearing.  Counsel was questioning the officer on whether

he had obtained a description of the vehicle from which Paul was selling drugs.  The trial court sustained

the prosecutor's objection to the question "Didn't you just testify yesterday that all you had [was] that

someone was selling from a vehicle?"  (TR. 352).

1:03 CV 0046                                    10

The state appellate court's approach to this issue was that defense counsel lacked a good faith belief that there had been a prior inconsistent statement because the officer had testified previously at the suppression hearing that the informant described the vehicle as a "Grand Marquis Mercury" and the officer testified at trial that the informant had described a "vehicle which at the time had a 30-day tag, a Mercury Grand Marquis." *State v. Paul*, 2002 WL 228848*5.


While Paul was fully entitled to impeach the testimony of any witness called against him, there is nothing in the trial or motion hearing transcripts that would support a good-faith belief that the arresting officer made prior inconsistent statements.  A defendant's Sixth Amendment right to test a witness' credibility does not give an attorney license to pursue unreasonable lines of questioning.  As generally expressed, the standard of review applicable to limitation of cross-examination is that "[a] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited in engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose the jury the facts from which jurors . . . could appropriately draw inference relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986), quoting *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).  It seems clear that defense counsel had no basis for this line of questioning.  It was neither "appropriate" nor designed to show bias.  Therefore, this claim fails because the state court decision was neither contrary to nor involved an unreasonable application of federal law.

1:03 CV 0046                                    11

>GROUND THREE:    Fourteenth Amendment.  Petitioner was denied a fair trial when the court allowed the prosecutor to improperly cross-examine a defense witness.  moreover [sic], the court would not require the detective to reveal the identity of the informant who was used in this case.

Paul complains that he was denied a fair trial because: 1) the prosecutor improperly accused his mother (a defense witness) of committing tax fraud; and 2) the trial court would not require the arresting officer to reveal the identity of the informant who allegedly saw Paul dealing drugs in the CMHA parking lot.

At the time of his arrest, Paul possessed around $1295 in cash, which "tended to bolster the argument that he had been dealing in drugs at the time of arrest." See *State v. Paul,* 2002 WL 228848*5. Paul claimed that he had won the money in the lottery.  During direct examination, Paul's mother, a defense witness, testified that she had purchased the winning lottery ticket on Paul's behalf.  The prosecutor then asked Paul's mother whether she was aware that she may have committed tax fraud by listing her own name, rather than Paul's, on an IRS form memorializing the lottery proceeds.  Paul claims this remark by the prosecutor was improper and prejudicial to his case.

On appeal, the State conceded that this was misconduct, but argued there was no prejudice.  The state appellate court agreed with the State that the error was harmless, explaining:

>So the jury had two equally plausible explanations for the defendant's possession of such a large sum of cash.  It was highly unlikely that the state's mention of tax fraud so tipped the scales that it resulted in the defendant's conviction. *Id.* at *6.

1:03 CV 0046                                    12

The U.S. Supreme Court has held that the purpose of due process in the context of prosecutor misconduct claims "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963).  Likewise, when considering prosecutor misconduct complaints, the "touchstone of due process analysis... is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982).

Prosecutor misconduct is subject to harmless error analysis.  Beginning with *Donnelly v. DeChristofaro*, when the misconduct did not infringe on a constitutional right such as the right to silence, then the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431  (1974); and see *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1996) (quoting *Donnelly*). "Even when the prosecutor's conduct was improper or even 'universally condemned,' (citation omitted), [the reviewing  court] can provide relief only if  the statements were so flagrant as to render the entire trial fundamentally unfair." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003); *Darden*, 477 U.S. at 181. Flagrancy of improper remarks is determined by: (1) the likelihood the remarks would mislead the jury or prejudice the accused; (2) whether the remarks are isolated or extensive; (3) whether the remarks were deliberately or accidentally presented to the jury; and (4) whether other evidence against the defendant was substantial. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1976); *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000); *Bowling*, 344 F.3d at 512-13; *Baxter v. Bell*, 402 F.3d 635, 641 (6th  Cir.  2005).

1:03 CV 0046                                          13

Ultimately, it must be determined whether the remarks were "so prejudicial that [they] required reversal [of a conviction] because only a retrial could correct the error." *U.S. v. Blandford*, 33 F.3d 658 (6th Cir. 1994).

The record established a strong case against Paul. It is difficult to see how mention of possible income tax evasion would render the entire trial fundamentally unfair. It cannot be said that the accusation of tax fraud misled the jury or prejudiced the defendant. Although the remarks were deliberate, the remaining evidence against Paul, together with his admission that he "sold a couple of stones," was sufficient to merit conviction even in light of the possiblity that the cash on his person was not obtained through drug sales.

Paul cites *White v. McAninch* to support his argument that the prosecutor's remarks deprived him of a fair trial. *Id*. at 235 F.3d 988 (6th Cir. 2000). That case is distinguishable. The defendant in *White* was on trial for sexual misconduct with a minor. During trial, his attorney failed to object when the prosecutor improperly asked about prior sexual acts between the victim and defendant. Inexplicably, the attorney questioned the victim further about those incidents on cross-examination. In Paul's situation, the challenged remarks were made by the prosecutor on direct examination, and their impact had nowhere near the damaging effect that occurred in the *White* case. The focus of the claims in *White* was on ineffective assistance of counsel, not prosecutor misconduct.

1:03 CV 0046                                        14

Paul raises a subargument that the identity of the informant was required to be revealed.  Paul relied on *Jenkins* which has nothing to do with prosecutor misconduct. Paul cites *United States v. Jenkins* to support the claim that an informant's name must be revealed when it would be essential to ensure fairness. *Id*., 4 F.3d 1338 (6th Cir. 1993). *Jenkins* clearly explains, however, that an informant's identity is *not* required to be divulged when the evidence on which the defendant was convicted was obtained directly by the agents who testified.

The U.S. Supreme Court has ruled  "whether a proper balance renders nondisclosure [of a confidential informant's identity] erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Rovario v. U.S.*, 353 U.S. 53, 62-63, 77 S.Ct. 623, 628-29, 1 L.Ed.2d 639 (1957); *Rugendorf v. U.S.*, 376 U.S. 528, 534-35, 84 S.Ct. 825, 829, 11 L.Ed.2d 887 (1964).  Moreover, the burden of proving the necessity of revealing an informant's identity to ensure fairness lies with the defendant.  *U.S. v. Willis*, 473 F.2d 450, 452 (6th Cir. 1973) *cert. denied* 412 U.S. 908 (1973).  As *Jenkins* explains, "[i]f the evidence on which the defendant was convicted was obtained personally by the... agents who did testify, the government is not required to produce the cooperating individual.  Mere invocation of the right to compulsory process does not automatically outweigh the public interest in protecting confidential informants." *Id*. at 1341.

1:03 CV 0046                                    15

Paul seems to be suggesting that an informant would have to have directly witnessed or been involved in the drug transaction to have made a positive identification.  This is illogical.  It was certainly possible for an informant to have reported suspicious activity that appeared to involve drug transactions without being certain that such a transaction was taking place.  The arresting officer conducted further surveillance and made the arrest on the basis of his own observations, not the informant's.  Thus as the state appellate court found, "there was no need to identify the informant's name on the record and Paul failed to establish that the informant's identity was vital to his defense." *Paul*, 2002 WL 228848*6.  Given that the arresting detective obtained the evidence on his own, Paul is incorrect that disclosure of that identity in this case was essential to ensure fairness.  Disclosure of the informant's identity would not have opened up other possible defenses given the "particular circumstances" of this case.  See *Roviaro*, 353 U.S. at 62.  The Court of Appeals did not rule contrary to or unreasonably apply clearly established federal law or misinterpret facts with regard to both parts of this ground.

> GROUND FOUR:    Fourteenth Amendment.  Petitioner was denied a fair trial when the trial court commented on the credibility of the witness and the evidence.  Moreover, the cumulative errors committed during the course of the trial deprived petitioner of a fair trial. [sic] Further exacerbated by improper prosecutorial argument.

Ground Four contains three separate sub-claims beginning with the trial court's referral to confidential *reliable* informant instruction.  The second and third sub-claims are each based on multiple instances of alleged improper testimony by the arresting detective and improper statements by the prosecuting attorney, respectively.

1:03 CV 0046                                    16

A.

Paul contends he was denied a fair trial because during closing arguments the trial court judge referred to the informant as a "confidential *reliable* informant," thus suggesting to the jury that the informant was, in the court's own opinion, credible and trustworthy.  The trial court unwittingly repeated the arresting officer's references to a "CRI," confidential reliable informant.  Paul argues that the writ should be granted and new trial ordered due to the following alleged "interjection of opinion" during jury instructions:

> Ladies and gentlemen, you are instructed that the identity of a confidential reliable informant, in order for them to remain effective in that role as confidential reliable informants, must be kept secret.
>
> Therefore, you are to disregard the comment and it is stricken from the record (Trial TR. 476).

The trial court's instruction was prompted by the State's objection to defense counsel's following closing remark:

> No name was given to the officer to, "Go seek Vernon Paul over there," or "Go seek Joe Jones," or any name whatsoever from his alleged confidential informant who supposedly, if he were that good, that reliable, would know who it was supposedly out there selling the drugs.
>
> (Trial TR. 475).

Obviously, it is important for a trial court judge to remain impartial in supervising and commenting on trial proceedings.  Actual and perceived impartiality "is critical because the judge's every action is likely to have a great influence on the jury."  *Nationwide Mutual Fire Insurance Co.  v. Ford*, 174 F.3d 801 (6th Cir. 1999).  While the trial court should have taken care to avoid any implication about the informant's

credibility, the remark likely had no bearing on the jury's decision.  The term "confidential reliable informant" is a technical phrase used by police to describe an individual who has provided accurate information about criminal activity in the past and who can potentially serve as an informant again in the future.

Although not intentional, the trial judge strayed into the prohibited area of what could appear to the jury as a comment on credibility.  Although the informant was not a witness testifying at trial, the informant's credibility certainly remained in the background of the trial.  Credibility is for the jury to determine.  See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).  Judicial comment can serve to clarify factual issues when counsel have "muddled" them.  See *U.S. v. Hickman*, 592 F.2d 932, 933 (6th Cir. 1979).  If it was the trial judge's intention to explain the meaning of confidential reliable informant, it failed.  The instruction did not explain the technical meaning of "CRI" except to state that this "reliable" person's identify must be kept secret.

The state appellate court stated that it would have been preferable to avoid using the term "reliable" when speaking to the jury about informants, but "there is no possibility that the jury took the court's use of the term reliable as indicating the court's opinion that the informant was, in fact, reliable.  Read in context, the court's instruction to the jury was, according to the state decision,  made for the sole purpose of protecting the informant's anonymity, and found "no prejudicial error because it could not have bolstered the credibility of the informant beyond that already established by the evidence."  The state court

1:03 CV 0046                                                    18

decision stressed that the informant's description of Paul's clothing matched closely to what Paul was

actually wearing, a point conceded by defense counsel in closing, and that the informant accurately

described the make and model of the vehicle used by Paul in his drug dealings.  *Id.* at *8.


In effect, the state decision was based on the conclusion that the error was harmless.  The case

rested squarely on the credibility of these officers involved in Paul's arrest and their credibility was

established by the seizure of a rock of crack cocaine.  The credibility of the informant was as the state court

decision stated, established by the evidence.  The connection of the gun, cash, pager and cell phone and

hearsay admission to drug activity hinged on Paul's actually possessing an illegal drug.  All the evidence fell

into place resting on the seizure of crack cocaine.  Consequently, the trial judge's use of "reliable" informant

did not have a substantial and injurious effect on the outcome of Paul's trial.  See *Brecht v. Abrahamson*,

507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *O'Neal v. McAnich*, 513 U.S. 432, 115

S.Ct. 992, 130 L.Ed.2d 947 (1995); *U.S. v. Dominguez Benitez*, 542 U.S. 74, 125 S.Ct. 2333, 2339

n. 7, 159 L.Ed.2d 157 (2004).


                                                    B.

Paul argues that the arresting officer, Detective Randy Ramsey, was allowed to testify to "all sorts

of improper and prejudicial matters" at trial.  (Traverse at 8).  Three specific instances are cited: 1)

Ramsey's testimony that he received a complaint that a black male was dealing drugs from his vehicle; 2)

Ramsey's testimony that he (Ramsey) stopped one of the persons who allegedly had contact with Paul

1:03 CV 0046                                       19

before his arrest (which Paul claims was inconsistent with Ramsey's pre-trial suppression motion testimony); and 3) Ramsey's "dissertation on drugs and how they are handled," including his speculation about the prevalence of pagers, cell phones, and folded money in drug transactions.  Paul claims these incidents of improper testimony were errors that, cumulatively, denied him a fair trial.

However, Paul argued only *one* of the these incidents before the Ohio Supreme Court: namely, that the officer had received information about a "black male dealing drugs from his vehicle".  Respondent maintains that the remaining two incidents are waived for purposes of this habeas petition.  The other two instances  were raised to the state court of appeals but not the Ohio Supreme Court.[2]

Paul has created by omission a peculiar species of procedural default due to the failure to "fairly present" these remaining two arguments to the Ohio Supreme Court.  Generally, the federal courts require a "plain statement" from the state courts that the claim is rejected due to procedural default.  *Coleman v. Thompson*, 501 U.S. 723, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).   However, "[t]his rule necessarily applies only when a state court has been presented with a federal claim, as will usually be true given that a federal claimant exhaust state-court remedies before raising the claim in a federal habeas

---

[2] Instead of arguing cumulative trial error due to three incidents, Paul argued: "In a number of instances, the court allowed improper prejudicial and hearsay testimony from Det. Randy Ramsey . . . Ramsey was allowed to testify to all sorts of improper and prejudicial matters, including a complaint he received that a black male was dealing drugs from his vehicle (TR. 313).  Ramsey testified he went to the scene and made certain observations."  (Memorandum in Support of Jurisdiction at 9, Docket No. 10, Exhibit 18).

1:03 CV 0046                                        20

petition." *Harris v. Reed*, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1980); *Coleman*,

501 U.S. at 734.  A federal court will not address a habeas petitioner's claim unless the petitioner has first

fairly presented his claim to the state courts.  *Dietz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004), *Hannah*

*v. Conke*, 49 F.3d 1193, 1196 (6th Cir. 1995).

 Respondent is correct that they are procedurally defaulted and Paul has not countered this argument by

submitting "cause and prejudice" to excuse the procedural default. *Wainwright v. Sykes*, 433 U.S. 72,

87, 97 S.Ct. 2457, 53 L.Ed.2d 594 (1977);  *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639,

91 L.Ed.2d 397 (1986); *Ritchie v. Eberhart*, 11 F.3d 487, 491 (6th Cir. 1993), *cert. denied*, 510 U.S.

1135 (1994).


        Paul's bypassing the Ohio Supreme Court results in a procedural default which serves as an

adequate and independent state ground to bar federal review.  See *Lordi v. Ishee*, 384 F.3d 189, 194 (6th

Cir. 2004); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  "Federal courts lack jurisdiction to consider

a habeas petition claim that was not fairly presented to the state courts." *Blackmon v. Bocher*, 394 F.3d

399, 400 (6th Cir. 2004); *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

Paul's obvious repetition of his brief to the state appellate court to the district court ill serves his purpose

to obtain federal collateral review.


        Respondent overlooks, however, that Paul's remaining argument under this ground was also

procedurally defaulted.  The state appellate court pointed out that this first argument was not separately

1:03 CV 0046                                      21

argued in Paul's brief as required by Ohio App. R. 16(A) and 12(A)(2).  *State v. Paul*, 2002 WL 228848*8.  Respondent though has allowed this remaining argument to be reviewed.

Returning to the remaining issue, the state appellate court found that at best Paul's complaint about the admission of the informant's statement to Detective Ramsey raised only a hearsay claim and that the informants' statements that prompted police to undertake an investigation are not hearsay under Ohio evidentiary law.  *Id.* at 9.

Paul refers the district court to *U.S. v. Hardy*, where the Sixth Circuit acknowledged that police investigation background evidence of drug transactions is often referred to as "*res gestae*" which does not implicate Evid. R. 404(b) concerning "bad acts."  *Id.*, 228 F.3d 745, 747-749 (6th Cir. 2000).  Citing Jennifer Y. Schuster, Uncharged Misconduct Under Rule 404(b); "The Admissiblity of Inextricably Intertwined Evidence," the Sixth Circuit related that:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense.  Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.
>
> *Id.*, 228 F.3d at 748.

Under the foregoing rationale from *Hardy*, Detective Ramsey's statements clearly fell into the background evidence exception.

1:03 CV 0046                                     22

Next with respect to Rule 803 governing hearsay, Paul refers the court to *U.S. v. Johnston*, which states that, "[o]ut-of-court statements offered for another purpose, e.g., providing background information to explain the actions of investigators, are not hearsay." *Id.*, 127 F.3d 380, 394 (5th Cir. 1997); and see *U.S. v. Carrillo*, 20 F.3d 617, 620 (5th Cir), *cert. denied*, 513 U.S. 901 (1994); *U.S. v. Gonzalez*, 967 F.2d 1032, 1035 (5th Cir. 1992).

The applicable law is generally that an out-of-court statement offered to explain an investigation may be prejudicial (inadmissible) "where it goes 'to the very heart of the prosecution's case.'" *U.S. v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990) quoting *Stewart v. Cowan*, 528 F.2d 76, 86 n. 4 (6th Cir. 1976).  In *Martin*, the government conceded error due to the Secret Service agent's repetition of verbal statements of the informant that led to defendant's arrest for food stamp trafficking. *Id.*, 897 F.2d at 1371. The decision held that when there is only "a general and rather vague statement of belief" from the informant, it falls into admissible background of explaining why a government investigation was undertaken. However, when the testimony attributed to the informant  specifically identifies the defendant by name, then it becomes an inadmissible statement offered to prove the truth of the matter asserted.  See *Martin*, 897 F.2d at 1371-1372.

At Paul's trial the officer's testimony was merely a straightforward explanation of why the investigation into Paul's activities began with no attempt "to use the other person's [informant's] information

1:03 CV 0046                                    23

due to a lack of evidence on the substantive charges."  Compare *Martin* at 1371.  Paul has not even

demonstrated an error in evidentiary law, much less demonstrating a violation of due process.[3]


                                      C.

Finally, Paul complains in this ground that during closing argument, the prosecuting attorney: 1)

improperly expressed an opinion as to the defendant's guilt; 2) stated that Paul had been *selling* crack

cocaine, a fact Paul claims was not supported by evidence; and 3) "exceeded all bounds of propriety" by

reviewing aspects of the evidence in sequence and attempting to "convict petitioner on general principle."


Paul's first sub-argument concerns the prosecutor's summarization of the evidence presented at

trial followed by the prosecution's statement that Paul was guilty.  The state appellate court digressed into

analysis on the premise that the prosecutor must not express opinion in closing argument.  The undersigned

agrees that the state decision was incorrect but it was incorrect in doubting the propriety of the prosecutor's

argument.  There was no conduct approaching the type of misconduct addressed in *U.S. v. Young*, 470

U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).  In *Young*, the prosecutor interjected himself personally

into the fray with his own thoughts on the matter ("I think," "I . . . give our personal impression").  Not here

though.  The prosecution did what he is required to do, argue Paul's guilt based on the evidence.  If the

---

[3] The undersigned recognizes that hearsay claims such as Paul's are generally raised as Sixth Amendment claims of infringement of the Confrontation Clause.  However the Supreme Court has been careful not to equate hearsay and Confirmation Clause claims.  In *Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *California v. Green*, 399 U.S. 149, 155-56, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).  Consequently, review of Paul's argument is limited to his claim of deprivation of fair trial due to evidentiary rulings.

1:03 CV 0046                                    24

state court decision is contrary to an unreasonable application of clearly established federal law, it is because the state court gave undue consideration to Paul's argument.

Nor does Paul's reference to circuit court decisions such as *Boyle v. Million*, 201 F.3d 711 (6th Cir. 2000) demonstrate a claim.  Those cases involve personal vouching, statements of a defendant's guilt divorced from the evidence indicating guilt, or statements based on evidence which had not been admitted. The prosecutor can state that the evidence establishes guilt.  That is precisely what the prosecutor did in Paul's case.  In any event, the state appellate court analyzed what it deemed "expression of opinion" as harmless error and found that there was no "meaningful chance" of a different outcome.  *State v. Paul*, 2002 WL 228848*11.  Given the overwhelming evidence of guilt, there certainly was no likelihood that the prosecutor's remarks in argument had a substantial or injurious effect in determining guilt.  See *Brecht v. Abrahamson, supra*.

Recasting Paul's second sub-argument in more scholarly terms, Paul maintains that the State's referral to Paul's act of selling crack cocaine was a reference to an uncharged offense.  The State argued:

> The man was selling drugs that day.  There is non dispute about it.  this Defendant was selling crack cocaine. [Objection overruled].  This Defendant was selling crack cocaine at 4100 Central on January 2nd of this year.  (TR. 459-60).

Paul apparently would have this court venture into Evid. R. 404(b) for use of evidence concerning "other crimes, wrongs, or acts."  (Compare *Martin v. Parker*, 11 Fed.3d 613, 615 (6th Cir. 1993) (prosecutor's reference to prior bad acts).  That analysis will not be necessary because Paul was charged

1:03 CV 0046                                            25

not only with possession or use of crack cocaine but also with preparation of crack cocaine for distribution (Count 3).  Paul's argument that defendant was charged only with possession of crack cocaine is a misstatement and the evidence showed that Paul had confessed to selling crack cocaine, which is distributing that illegal substance (TR. 345).  Paul ignores the third count against him, which also required the State to prove him guilty beyond a reasonable doubt.

The State had argued at trial that pagers and cell phones could be used to distribute crack cocaine. Paul counters that no papers or cell phones were introduced at trial and Detective Ramsey testified that at no point did Paul use either a pager or cell phone (TR. 353).  Contrary to Paul's mischaracterization of the evidence, Defective Ramsey testified on direct and cross that a cell phone and pager were recovered from Paul's person (TR. 334-37, 353).  The actual items were not physically produced and Detective Ramsey stated he did not observe Paul using them.  However. there was evidence that Paul possessed them and the State's closing argument was related to the charged offenses and certainly supported by the evidence. Paul appears to have also forgotten that he was convicted on Count 4 of the indictment for possession of criminal tools to wit: cell phone and pager.

In his third subpart to this argument, Paul complains that the state in closing argument narrated a list of the exhibits in evidence and encouraged the jury to convict on the basis of that evidence.  Specifically, the prosecutor argued:

> We brought in a detective.  We brought in a patrol officer.  We got the gun, the
> drugs, the lab report, and we gave the Defendant his day in court and now it is

1:03 CV 0046                                    26

time for him to face justice, for him to accept responsibility. [Objection overruled].
And that is in your hands and that is why he is guilty of all four counts. Thank you.
(TR. 353).

Paul argues these remarks were intended to "arouse the passion and prejudice of a local jury and convict petitioner on general principle" and that the remarks "exceeded all bounds of propriety."

The state appellate court was correct that nothing in these remarks constituted a violation of due process. This statement follows the preferred pattern of arguing for a conviction on the basis of the *evidence* presented at trial rather than on mere speculation or a prosecutor's instinct or opinion. The language does not in any way reflect an attempt to arouse passion and prejudice. The remarks were not improper and not prejudicial. The state court decisions relating to Ground Four were not contrary to nor involved an unreasonable application of federal law.

GROUND FIVE:    Sixth Amendment. Petitioner was denied a fair trial and the assistance of counsel when the court precluded defense counsel from arguing reasonable inferences from the evidence.

Paul claims that the trial court wrongly sustained prosecutors' objections on two occasions: first, when defense counsel tried to argue that the confidential reliable informant should have been able to give the CMHA police Paul's name if that informant was truly reliable; and second, when defense counsel tried to argue that the arresting officer should have detained persons that the officer claimed were involved in a drug transaction with Paul. The first subpart is related to the incident involving the trial court's reference to "confidential reliable informant."

In response to the trial court's refusal to require the arresting officer to reveal the name of his confidential informant, defense counsel tried to persuade the jury that a truly reliable informant would have been able to give police the name of the alleged drug deals.  The trial court judge sustained the state's objection.  As the Court of Appeals points out, it is not clear why the trial court sustained this objection and instructed the jury to disregard the comment because "that role as a confidential reliable informant must be kept secret."

Next, Paul argued that the trial court improperly sustained objections to defense counsel's comments that the arresting officer should have detained other individuals who were alleged to be involved in the drug transaction with Paul.  The grounds for the objection are unclear, although presumably the prosecutor believed that defense counsel's remark that "because somebody on Central Avenue talks to somebody, all of a sudden it is a drug deal" was inflammatory.

The state appellate court's decision was essentially that defense counsel's line of argument was futile and the trial court's rulings were harmless.  The court reasoned that a person can provide an accurate description of a criminal perpetrator without knowing the perpetrator's name.

As currently composed, Paul's fifth ground relies exclusively on the Sixth Amendment right to effective assistance of trial.  Generally, this argument invokes the *Strickland v. Washington* two-prong test for determining whether a petitioner had been deprived of the Sixth Amendment right: deficient

1:03 CV 0046                                          28

performance by trial defense counsel; followed by prejudice to the outcome of the proceeding due to the cited instance of defense counsel's misfeasance. *Id.*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This mantle does not fit Paul's argument. He does not fault counsel, but instead blames the trial court.

Rather Paul refers the Court to several Ohio cases concerning "wide latitude" in closing. These cases lay down no concrete rule of law and are concerned with inaccurate statement of law by the prosecutor; prosecutor's reference to evidence that had not been admitted; and a state court application of *Darden v. Wainwright* with respect to the prosecutor's statement that the defendant would go on killing and would have killed the little girl's parents if given the opportunity.

The sole U.S. Supreme Court decision cited by Paul is *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), which held that a total denial of the opportunity for summation in jury and nonjury trials deprives the defendant of the right to present his defense. Defense counsel was not denied the opportunity to present closing argument. Further, the Supreme Court went on to state that the trial court has broad discretion in restraining closing argument. *Id.*, 422 U.S. at 862. The trial court's rulings were neither contrary to nor an unreasonable application of *Herring*.

1:03 CV 0046                                29

GROUND SIX:        Fourteenth Amendment.  Petitioner was denied due process of law when the court overruled a motion for judgment of acquittal as there was no evidence that petitioner possessed a firearm.  Further, there was no evidence that the controlled substance was crack cocaine.

In his traverse, Paul argues three sub-claims under Ground Six: 1) that there was no evidence that he had acquired, used, or possessed a firearm; 2) that there was no evidence that the gun was a firearm; and 3) that there was no evidence that the substance confiscated was crack cocaine.  As explained by the state appellate court, a motion for judgment of acquittal will not be granted when, after construing the evidence in a light most favorable to the state, reasonable minds could differ on whether each element of the charged offense has been proven beyond a reasonable doubt.  *State v. Paul*, at *13.  The state court referred to evidence that Paul had, at the very least, constructive possession of the gun in his car in spite of the possibility that another individual who allegedly had access to the vehicle could have left it there.

Paul contends that the denial of his Rule 29 motion for acquittal was a denial of due process under the Fourteenth Amendment.  The test for denial of a Rule 29 motion is whether there was sufficient evidence to support the conviction in the light most favorable to the prosecutor.  See *U.S. v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994); *U.S. v. Harrod*, 168 F.3d 887, 889-90 (6th Cir. 1999) citing *Jackson v. Virginia*, 443 U.S. 307, 320-21, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

1:03 CV 0046                                    30

The state appellate court found that the evidence established Paul's constructive possession of a

.38 caliber Smith and Wesson handgun that was found in the Mercury Grand Marquis that Paul had been

driving in violation of Ohio Rev. Code §2923.13(A).  This section prohibits a previously convicted felon

like Paul from knowingly acquiring, having or carrying a firearm or dangerous ordnance.  The acts to

acquire or to have a firearm are prohibited and Ohio courts have read these terms to include constructive

possession.  *State v. Messner*, 107 Ohio App.3d, 51 (1995); *State v. Hardy*, 60 Ohio App.2d 325

(1978).


Paul argues that he was not seen with the gun and that Detective Ramsey had not seen him in the

Grand Marquis.  This argument ignores the evidence of Paul's presence in the car, and that acquiring or

having a firearm does not require Paul to be found actually holding the gun.  As the state appellate court

pointed out, Paul owned the Grand Marquis, he did not deny driving the car from the CMHA parking lot,

held the keys to the car when he was patted down, and the car had been locked with the gun inside. *State

v. Paul*, at *18.  Under the standard of review from *Johnson v. Virginia*, the state decision was not

contrary to or an unreasonable application of clearly established federal law nor an unreasonable

determination of the facts.


Paul next argues that the gun was encased and that there was no evidence proving that it was

operable.  Paul is referring to the definition of firearm contained in Ohio Rev. Code §2912.11(B)(1) which

requires the weapon to be operable or readily rendered operable.  The case could be opened, but Paul

1:03 CV 0046                                      31

is correct that there was no direct evidence of operability.        The state appellate court held that since

the gun was in evidence, the jury had circumstantial evidence of operability.

The only explanation put forth in support of this contention is that all or part of the gun was

enclosed in some sort of plastic case which was apparently not opened or removed during display at trial.

It is not clear from the trial record whether the casing would interfere with the gun's operation while in

place, but whether or not it does, the casing could presumably be removed without much effort.  Since R.C.

2923.13 states that "a firearm includes an unloaded firearm *and any firearm which is inoperable, but*

*which can be readily rendered operable*" (emphasis added), the gun in question was properly regarded

as a firearm in the absence of any evidence that it was somehow otherwise incapable of being quickly

rendered operable.  Moreover, under Ohio law no direct evidence of operability is necessary.  Introduction

of the actual weapon into evidence is probative evidence of its operability.  *State v. Adkins*, 40 Ohio

App.2d 473, 477, 320 N.E.2d 308 (1973); *Booker v. Engle*, 517 F.Supp. 558, 561 (S.D. Ohio 1981).

Since the jury had before it the actual weapon, could consider its operability, and found it operable, in the

light most favorable to the prosecution there was sufficient evidence supporting the conviction and there

was no trial court error.

Finally, Paul argues that there was no evidence that the substance confiscated was crack cocaine.

Again in the light most favorable to the prosecution there was sufficient evidence that the substance seized

was crack cocaine and not merely cocaine.  the state appellate court explained that although the cocaine

1:03 CV 0046                                      32

was admitted into evidence in crushed form, the evidence established that it had been originally received in rock form at the time of Paul's arrest.  *State v. Paul*, at *14.  Consequently, denial of Paul's motion for acquittal was not contrary to nor an unreasonable application of clearly established law nor an unreasonable determination of the facts.

> GROUND SEVEN:     Sixth and Fourteenth Amendments.   Petitioner was denied due process of law when he was given a maximum sentence for exercising his right to a trial.

Paul argues that he was punished for refusing to plead guilty and electing to go to trial because the sentence imposed after conviction was harsher than the one offered as part of a pre-trial plea bargain.  He claims that since no new evidence emerged at trial that was not available at the time of the plea bargaining session, it was improper for the lower court to impose a sentence for each count greater than the ones proposed as part of the plea bargain.

The Sixth Amendment right to demand jury trial should not be deterred or punished by consideration as a sentencing factor.  See *U.S. v. Jackson*, 390 U.S. 570, 581, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); *U.S. v. Moskovits*, 86 F.3d 1303, 1310-11 (3rd Cir. 1996); *Waring v. Delo*, 7 F.3d 753, 756, 758 (8th Cir. 1993).

Paul maintains that a plea offer was made where *the court* told him that if he would plead guilty to having a weapon while under a disability and preparation of drugs for sale, it would overlook his

1:03 CV 0046                                    33

extensive criminal history and sentence him to concurrent six month sentences.  Paul claims he turned down

the offer and was sentenced to three consecutive twelve month sentences.

The only U.S. Supreme Court decision Paul relies upon is *U.S. v. Jackson*, which involved a

scenario whereby greater penalty (death) became available by statute if defendant failed to plead guilty and

insisted upon requiring the government to present a case against defendant.  The case is factually inapposite.

Alternatively Paul relies on *State v. Byrd*, 63 Ohio St.2d 280, 407 N.E.2d 1384, 17 O.O.3d 184

(1980) which actually involved Ohio's interpretation of the Fifth Amendment, not Sixth.  In *Byrd*, the Ohio

Supreme Court held that the trial court's participation in plea negotiations infringed on that part of the Fifth

Amendment  protection  against  compulsion  to  be  a  witness  against  oneself.  *Id.*, 63 Ohio St.2d at 291.

Active judicial efforts render a plea involuntary under this peculiar view.  *Id.*, 63 Ohio St.2d at 294.  Paul

though did not present a Fifth Amendment argument in his petition.  Instead he argued that due process was

violated.

Although no Supreme Court decision has determined this issue, the federal circuit courts have

uniformly found no *per se* violation of constitutional due process due to judicial participation in the plea

bargaining process. See *Frank v. Blackburn*, 646 F.2d 873, 880 (5th Cir. 1980), modified 646 F.2d 902

(5th Cir. 1981), *cert. denied*, 454 U.S. 840 (1981); *Blackmon v. Wainwright*, 608 F.2d 183, 184 (5th

Cir. 1979), *cert. denied*, 449 U.S. 842 (1980); *Toler v. Wyrick*, 563 F.2d 372, 374 (8th Cir. 1977), *cert.*

*denied* 435 U.S. 907 (1978); *Miles v. Dorsey*, 61 F.3d 1459, 1467 (10th Cir. 1995), *cert. denied*, 516

U.S. 1062 (1995).  Consequently Paul's claim of active participation by the state trial court has no weight

on federal collateral review, even though it is a major factor in Ohio's jurisprudence.


Generally, for purposes of federal claims when the issue of judicial vindictiveness arises, petitioners

refer to *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), instead of

sundry state court cases as Paul has.  Paul's omission of *Pearce* is understandable because that decision

limited consideration of judicial vindictiveness to "whenever a judge imposes a more severe sentence upon

a defendant after a new trial . . ."  *Pearce*, 395 U.S. at 726.  The holdings in *Pearce* and its subsequent

modification in *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), twenty years

later, do not detract from the Supreme Court's approval of the plea bargaining process in *Santobello v.*

*New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).  The U.S. Supreme Court has not

expressly ruled whether the Constitution prohibits more severe sentences following a defendant's *refusal*

of a plea bargain offer.


Moreover lower federal courts have not required the trial court to preserve the sentence offered

as part of a plea agreement and apply it after conviction.  First, "mere disparity in sentences is insufficient

to show that the sentencing court penalized a defendant for going to trial."  *U.S. v. Frost*, 914 F.2d 756

(6th Cir. 1990).  Second, "it is highly questionable whether *Pearce* applies to plea bargaining situations."

*Martin v. Blackburn*, 606 F.2d 92, 93 (5th Cir. 1979), *cert. denied*, 455 U.S. 953 (1980).  Third, a

1:03 CV 0046                                              35

requirement to bind the trial courts to a rejected plea offer is totally inconsistent with *Mabry v. Johnson*'s,

discussion on withdrawn plea offers not being specifically enforceable.  *Id.*, 467 U.S. 504, 510, 104 S.Ct.

2543, 81 L.Ed.2d 437 (1984).


The state court decision was neither contrary to nor an unreasonable application of clearly

established federal law, nor did their decision involve an unreasonable application of federal law to the

facts.


> GROUND EIGHT:    Fourteenth Amendment.  Petitioner was deprived of his
> property without due process of law when the court
> ordered a summary forfeiture without a trial or submission
> of the cause to the jury of property of petitioner.

Paul argues three separate claims under ground eight: 1) that the forfeiture was involuntarily, not

a voluntary forfeiture of cash, cell phone, pager, and gun); 2) that summary forfeiture of Paul's property

deprived him of due process of law; and 3) forfeiture of the property after trial subjected Paul to double

jeopardy prohibited by the Constitution.  On his actual habeas petition, Paul also states that he was denied

due process when the trial court refused to refer the issue of forfeiture to a jury.  Paul raised this last claim

as an objection during the trial.


The state court decision at issue found that the forfeiture procedures of Ohio Rev. Code §2933.43

were properly followed.  Respondent contends that federal collateral review of this last ground is entirely

barred due to procedural default due to waiver at trial, and because the argument that there was a denial

of due process was not presented to the state courts.  The state appellate court did note that Paul's sole objection to the forfeiture was that the matter should go to the jury.  *State v. Paul*, at *16.

Paul had argued to the Ohio Supreme Court that due process was violated by the erroneous journal entry and summary forfeiture, and cited *State v. Casalicchio*, 58 Ohio St.3d 178, 569 N.E.2d 916 (1991) (a case in which Paul's defense counsel had argued and prevailed on double jeopardy due to the State's failure to seek forfeiture prior to sentencing) and *U.S. v James Daniel Good Real Property*, 510 U.S. 43, 48 (1993).

Respondent argues that Paul procedurally defaulted by failing to contemporaneously object to the trial court's subsequent journal entry error.  This argument makes little sense.  Defense counsel is not expected to contemporaneously object to the court's written jurisdiction.  However Paul fails to show that this mistake had any harmful consequence.  Proper recourse would have been to timely call this mistake to the trial court's attention rather than raising an inconsequential mistake as an issue on appeal.  In any event Paul has not shown the error was anything more than inconsequential.

As for the second sub-argument,  Paul's double jeopardy argument based on *State v. Casalicchio*, is misplaced because the State had not raised the issue of forfeiture post-sentence.  the State had filed a petition of forfeiture for seized contraband with indictment.  Hence there was no double jeopardy in attempting to exercise forfeiture after the criminal case had concluded.  Likewise the prohibition

1:03 CV 0046                                         37

against forfeiture without prior notice and hearing has no application to these circumstances, since there was both notice and hearing.  Compare *Jones Daniel Good Real Property*, 510 U.S. at 48 (where the government seizes property not to preserve evidence of criminal wrongdoing but to assert ownership and control over the property, its actions must comply with due process absent exigent circumstances).

Finally, though, with respect to the third sub-argument, Respondent's procedural default argument is correct.  The jury trial entitlement argument which had been presented to the state appellate court, was indeed omitted in the memorandum in support of jurisdiction (Respondent's Ex. 18, pg. 13, Docket No. 10).  This final subargument was defaulted by the failure to fairly present it to the state's highest court and no course or prejudice has been demonstrated.  Consequently, the state court decision denying Paul's due process arguments made under ground eight was not contrary to Supreme Court precedent nor did it involve an unreasonable determination of the facts.

Ultimately, Paul's petition fails because Paul failed to "point to a Constitutional violation that probably resulted in the conviction of one who was actually innocent." *White v. Schotten*, 201 F.3d 743, 753 (6th Cir. 2000); *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1997); *Murray v. Carrier*, 477 U.S. 478,  496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Accordingly for the foregoing reasons the application under 28 U. S.C. §2254 should be denied.

1:03 CV 0046                                  38

## CONCLUSION AND RECOMMENDATION

Following review of this petition and applicable law, it is recommended that Paul's petition for

federal habeas corpus relief under 28 U.S.C. 2254 be denied.  Paul has not demonstrated that his custody

is unlawful because of any significant constitutional violation.  None of the Court of Appeals' conclusions

were contrary to clearly established Federal law, nor did any of their conclusions involve an unreasonable

application of Federal law.  Further, that court's decision was not based on an unreasonable determination

of the facts in light of the evidence presented at trial.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court

within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES

the right to appeal the Magistrate Judge's recommendation.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir.

1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).



                                      s/James S. Gallas
                                    United States Magistrate Judge

Dated: August 1, 2005